**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION**

| | |
|---|---|
| **H-D U.S.A., LLC and HARLEY-DAVIDSON MOTOR COMPANY GROUP, LLC,** | Case No. 16-CV-1167 |
| Plaintiffs, | |
| vs. | **COMPLAINT FOR TRADEMARK COUNTERFEITING, TRADEMARK INFRINGEMENT, TRADEMARK DILUTION, CYBERSQUATTING, COPYRIGHT INFRINGEMENT AND UNFAIR COMPETITION** |
| **GEARLAUNCH, INC., a Delaware Corporation, d/b/a Gear Harley, TeeKiwi, TeeFuny, TeeSeason, TeeShop4U Company a/k/a Biker's Corner, and TeeDig and JOHN DOES** | |
| Defendant. | **JURY TRIAL REQUESTED** |

## COMPLAINT

Plaintiffs H-D U.S.A., LLC and Harley-Davidson Motor Company Group, LLC (Plaintiffs and their predecessors in interest, together with their parents, subsidiaries, and affiliated companies are collectively referred to as "Harley"), by their undersigned attorneys, allege as follows, upon actual knowledge with respect to themselves and their own acts, and upon information and belief as to all other matters:

### NATURE OF THE ACTION

1.      This is a civil action for trademark counterfeiting, trademark infringement, trademark dilution, cybersquatting, copyright infringement, and unfair competition arising under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the Copyright Act, 17 U.S.C. § 101, *et seq.*, Wisconsin state law, and common law.  Harley seeks equitable and monetary relief for the actions of GearLaunch, Inc. doing business as Gear Harley, TeeKiwi, TeeFuny, TeeSeason,

TeeShop4U Company a/k/a Biker's Corner, and TeeDig, others acting on behalf of GearLaunch, Inc., the registrant(s) and owners(s) of the domain names GEARHARLEY.COM, TEEKIWI.COM, TEEFUNY.COM, TEESEASON.COM, TEESHOP4U.COM, TEEDIG.COM, CART-CHECKOUT.COM, and CUSTOMTEESALES.COM and others acting on their behalf (collectively, "Defendants") that constitute willful violations of Harley's trademark rights in its HARLEY-DAVIDSON, HARLEY, H-D and SUPER GLIDE word marks, and its Bar & Shield Logo, Willie G. Skull Logo, and Number 1 Logo trademarks shown below (collectively, "Harley's Trademarks"), and Harley's copyright rights in the Willie G. Skull Logo.

| The "Bar & Shield Logo" | The "Willie G. Skull Logo" | The "Number 1 Logo" |
|---|---|---|
|  | | |

2.      After being placed on express notice of Harley's trademark rights and Harley's objections to Defendants' actions that are the subject of this Complaint, Defendants nonetheless continued to promote and sell apparel products that display Harley's Trademarks, as shown below in representative examples of Defendants' products:

2



Case 2:16-cv-01167-LA   Filed 08/30/16   Page 3 of 48   Document 1



3. Defendants' unlawful activities described below infringe Harley's Trademarks, are likely to dilute and tarnish the famous HARLEY-DAVIDSON, HARLEY, H-D, and Bar & Shield Logo marks, constitute cybersquatting, copyright infringement, and/or unfair competition, and have caused and will continue to cause, unless enjoined, irreparable harm to Harley, Harley's trademarks, and the consuming public.

4. Harley seeks injunctive and other relief from Defendants' unauthorized use of Harley's Trademarks, and violations of Harley's copyright rights in the Willie G. Skull Logo, including without limitation an injunction enjoining Defendants from engaging in their unlawful activities, statutory damages, Defendants' profits, Harley's actual damages, and Harley's attorneys' fees and costs.

## THE PARTIES

5. Plaintiff H-D U.S.A., LLC is a Wisconsin limited liability company having a principal place of business at 3700 West Juneau Avenue, Milwaukee, Wisconsin 53208, and is the owner of the trademarks asserted in this action, *i.e.* Harley's Trademarks.

4

6.     Plaintiff Harley-Davidson Motor Company Group, LLC d/b/a Harley-Davidson Motor Company is a Wisconsin limited liability company having its principal place of business at 3700 W. Juneau Avenue, Milwaukee, Wisconsin 53208, and is a licensee of the Harley Trademarks.

7.     Defendant GearLaunch, Inc., doing business as Gear Harley, TeeKiwi, TeeFuny, TeeSeason, TeeShop4U Company a/k/a Biker's Corner, and TeeDig ("GearLaunch"), is a Delaware corporation with a principal place of business at 234 Front St., 3rd Floor, San Francisco, CA 94111.  GearLaunch is not an authorized Harley dealer and is not an authorized licensee of any of Harley's Trademarks.

8.     Harley is not aware of the true name and capacity of the other persons acting on behalf of GearLaunch who have participated in the activities described below, including the registrant(s) and owners(s) of the domain names GEARHARLEY.COM, TEEKIWI.COM, TEEFUNY.COM, TEESEASON.COM, TEESHOP4U.COM, TEEDIG.COM, CART-CHECKOUT.COM, and CUSTOMETEESALES.COM and others acting on their behalf.  The domain names GEARHARLEY.COM, TEEKIWI.COM, TEEFUNY.COM, TEESEASON.COM, TEESHOP4U.COM, TEEDIG.COM, CART-CHECKOUT.COM, and CUSTOMETEESALES.COM were each registered using a private registration service.  Thus, H-D brings this action against these other defendants identified as the "John Does."

9.     Collectively, all defendants named in Paragraphs 7 and 8 above are referred to as the "Defendants."

### JURISDICTION AND VENUE

10.     This action arises under the federal Trademark Act, 15 U.S.C. §§ 1051, *et seq.,* the Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq.*, Wisconsin state law, and common law.

5

11.     This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121, 17 U.S.C. § 501, and 28 U.S.C. §§ 1331 and 1338(a) and (b).  Because the parties are citizens of different states and the matter in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs, this Court also has jurisdiction under 28 U.S.C. § 1332.  Jurisdiction over the state law claims is also appropriate under 28 U.S.C. § 1367(a) and principles of pendent jurisdiction because those claims are substantially related to the federal claims.

12.     This Court has personal jurisdiction over Defendants and venue is proper pursuant to 28 U.S.C. §§ 1391(b) and (c).  Venue is also proper because Defendants are subject to personal jurisdiction in this District.

## HARLEY, ITS PRODUCTS AND SERVICES, AND ITS TRADEMARKS AND COPYRIGHT

13.     Harley is a world-famous manufacturer of motorcycles and a wide variety of other products and services, including apparel products.

14.     Founded in 1903, Harley has manufactured, promoted, and sold motorcycles and related products for over 110 years.

15.     Harley owns the exclusive right to use Harley's Trademarks and variations thereof for motorcycles and related products and services, including clothing and accessories.

16.     Since at least as early as 1903, Harley has used and promoted the HARLEY-DAVIDSON mark for motorcycles, motorcycle parts, and motorcycle accessories.

17.     Since at least 1915, Harley has used the HARLEY-DAVIDSON mark in connection with apparel.

6

18. For decades, Harley has also used the HARLEY trademark in connection with motorcycles, motorcycle parts and accessories, motorcycle clothing, and various other products and services.

19. Since at least as early as 1912, Harley has used and promoted the H-D mark and/or its variation without the hyphen "HD" (collectively, the "H-D Mark") in connection with motorcycles. In addition, Harley has offered for decades motorcycle parts and accessories, motorcycle clothing, and various other products and services under the H-D Mark.

20. Since at least as early as August 30, 1970, Harley has used and promoted the SUPER GLIDE mark in connection with motorcycles. In addition, Harley has offered for many years motorcycle parts and accessories, motorcycle clothing, and/or various other products and services under the SUPER GLIDE mark.

21. Since at least as early as 1910, Harley has used the distinctive Bar & Shield Logo mark and variations thereof in the U.S., representative examples of which are shown below (collectively referred to as the "Bar & Shield Logo"), in connection with motorcycles and related products and services. Harley's rights in the Bar & Shield Logo extend to the mark's design (*i.e.*, the bar and shield design), regardless of the wording contained within the bar and shield design.



22.     Since at least 1915, Harley has used the HARLEY-DAVIDSON mark and the Bar & Shield Logo in connection with apparel.

23.     Since at least 2000, Harley has used the Willie G. Skull Logo in connection with motorcycles, motorcycle parts, and motorcycle accessories.

24.     Since at least 2000, Harley has used the Willie G. Skull Logo in connection with apparel. Harley has also extensively used the Willie G. Skull Logo in connection with a wide variety of other goods, including jewelry, watches, footwear, wallets, clocks, and pins.

25.     The Willie G. Skull Logo was created by Willie G. Davidson ("Willie G."), the son of former Harley-Davidson president, William H. Davidson, and the grandson of Harley-Davidson co-founder William A. Davidson. Willie G. has held numerous positions within Harley-Davidson, including former Senior Vice President & Chief Styling Officer of Harley-Davidson, and the head of Harley-Davidson's Willie G. Davidson Product Development Center. During his career, Willie G. was responsible for approving Harley-Davidson motorcycle designs, and he also personally designed the Willie G. Skull Logo. Willie G., an icon in the motorcycle industry, was inducted into the American Motorcyclist Association Motorcycle Hall of Fame in 1999. In 2014, he was inducted into the Motorcycle Hall of Fame as a "Motorcycle Hall of Fame Legend."

26.     Consumers are familiar with and recognize Harley-Davidson's Willie G. Skull Logo as an indicator of source for Harley-Davidson's motorcycles, motorcycle parts, motorcycle accessories, and collateral products such as apparel.

27.     Over the years, Harley has expanded its business to include a wide range of other products and services, including but not limited to accessories, patches, signs, collectibles, and

8

more. Harley has extensively promoted Harley's Trademarks across Harley's extensive line of products and services over the years.

28. Harley has used Harley's Trademarks for many years in connection with clothing, headwear, and footwear, including t-shirts, jackets, tank tops, and other shirts. Apparel -- both apparel products sold by Harley and by its licensees as discussed below -- is a significant part of Harley's business.

29. Over the years, Harley has offered, itself and through authorized licensees, riding gear, t-shirts, shirts, sweatshirts, and numerous other apparel products bearing Harley's Trademarks. Representative photographs of Harley's apparel products bearing Harley's Trademarks are shown below.

 


















30.     Numerous authorized licensees of Harley in the U.S. sell and have sold for decades a wide range of merchandise under Harley Trademarks, including many licensees specifically for various apparel products.

31.     Harley has standards and guidelines to which all authorized licensed products branded with Harley's trademarks, including apparel, must adhere.  These standards and guidelines allow Harley to control the quality and appearance, among other things, of licensed products offered in connection with Harley's Trademarks.  Moreover, all licensed merchandise, including apparel, is subject to Harley's prior written approval before it is manufactured, promoted, and sold to the public by Harley's licensees.

32.     Harley's Trademarks have been extensively promoted nationwide across Harley's many product lines.  Harley markets and sells motorcycles, apparel, and accessories products under Harley's Trademarks through a network of more than 690 authorized dealers located

throughout the country, and through numerous other retail outlets, including high-profile and highly-trafficked outlets (*e.g.*, stores located at popular airports).

33.     Harley's apparel products are also sold through the HARLEY-DAVIDSON.COM website, authorized dealers' websites, and websites of Harley's authorized licensees.

34.     Harley and its authorized dealers and licensees have sold many billions of dollars of products and services under the HARLEY-DAVIDSON, HARLEY, H-D, and Bar & Shield Logo marks over the years, and have expended many millions of dollars advertising and promoting those marks through virtually every media.  For example, Harley has promoted its products and services under such marks through dealer promotions, customer events, industry events, motorcycle enthusiast events, direct mailings, national television, print, and radio advertisements, and the Internet.

35.     Harley, its products and services, and its HARLEY-DAVIDSON, HARLEY,  H-D, and Bar & Shield Logo marks have all received significant unsolicited media coverage for many years, including, for example, in national publications such as *Business Week*, *The Chicago Tribune, The New York Times, The Wall Street Journal, The Washington Post,* and *USA Today,* as well as in numerous national television programs and online publications and websites, such as MSNBC, CNN Money, CNN.COM, and Yahoo!

36.     As a result of Harley's significant promotional efforts, commercial success, and popularity for decades, the HARLEY-DAVIDSON brand has been ranked annually for the past decade among the top 100 most valuable brands in the world by Interbrand, a leading independent branding firm.  In 2015, Interbrand estimated the value of the HARLEY-DAVIDSON brand at US $5.46 billion.  In 2016, Tenet Partners ranked the HARLEY-

DAVIDSON brand as the 11th Most Powerful Brand in its Top 100 Most Powerful Brands of 2016 report.

37.     Based on Harley's longstanding and extensive use of the HARLEY-DAVIDSON, HARLEY, H-D, and Bar & Shield Logo, and the widespread advertising, publicity, promotion, and substantial sales of products and services under those marks, these marks have been well known and famous to both the general public and the motorcycling public for many years.

38.     In *H-D Michigan LLC v. Broehm*, Opposition No. 91177156, the Trademark Trial and Appeal Board of the United States Patent and Trademark Office ("Board") expressly held that the HARLEY-DAVIDSON, HARLEY, and Bar & Shield Logo marks were famous for motorcycles, apparel, and accessories.  2009 WL 1227921, at *5 (TTAB 2009).

39.     The Court of Appeals for the Federal Circuit has recognized HARLEY-DAVIDSON as a well-known and famous mark.  *See Ronda Ag v. Harley-Davidson, Inc.,* 1997 U.S. App. LEXIS 3597, *3-4 (Fed. Cir. Feb. 27, 1997).

### HARLEY'S TRADEMARK AND COPYRIGHT REGISTRATIONS

40.     In addition to its longstanding and strong common-law rights in the HARLEY-DAVIDSON mark, Harley owns, among others, the following federal registrations for the HARLEY-DAVIDSON mark:

| Mark | Reg. No. Reg. Date | Goods and Services |
|---|---|---|
| HARLEY-DAVIDSON | 3393840 03-11-2008 | House mark for a full line of clothing, footwear and headwear |
| HARLEY-DAVIDSON | 0507163 03-01-1949 | Motorcycle shirts, sweaters, breeches, neckties, coveralls, rain coats and hats, jackets, helmets, caps and boots |
| HARLEY-DAVIDSON | 1234404 04-12-1983 | Sunglasses and protective helmets for motorcyclists; Clothing-namely, jackets, pants, shirts, T-shirts, vests, jeans, riding suits, bandanas, rain suits, shorts, |

| Mark | Reg. No. Reg. Date | Goods and Services |
|---|---|---|
| | | nightgowns, halters, underwear, tank tops, sweatshirts, night shirts, socks, gloves, hats, caps and boots |
| HARLEY-DAVIDSON | 1450348 08-04-1987 | Bumper stickers, removable tattoos, pressure sensitive decals, sweat pants, sweaters, suspenders, scarves, bandanas, leather clothing, namely, jackets, vests, gloves, jeans, chaps, tops, boots, shorts, caps, belts and parts of footwear, namely boot tips, among other products |
| HARLEY-DAVIDSON | 0526750 06-27-1950 | Motorcycles and structural parts thereof, accessories-namely, intermediate stands, seats, foot rests and extensions, windshields, fender tips, exhaust stacks, grips, name plates, saddle covers, luggage carriers, license frames, foot pedal pads, tandem seats, foot rests, rear view mirrors |
| HARLEY-DAVIDSON | 1311457 12-25-1984 | Retail store services in the field of motorcycles, among others services |

41.     In addition to its longstanding and strong common-law rights in the HARLEY

mark, Harley owns, among others, the following federal registrations:

| Mark | Reg. No. Reg. Date | Goods and Services |
|---|---|---|
| HARLEY | 1406876 08-26-1986 | Clothing; namely--tee shirts for men, women and children; knit tops for women and girls; and children's shirts |
| HARLEY | 1683455 04-14-1992 | Shirts, tank tops, boots and sweatshirts |
| HARLEY | 1708362 8-18-1992 | Embroidered patches for clothing |
| HARLEY | 1352679 08-06-1985 | Motorcycles |

42.     In addition to its longstanding and strong common-law rights in the H-D Mark,

Harley owns, among others, the following federal registrations:

| Mark | Reg. No. Reg. Date | Goods and Services |
|---|---|---|
| HD | 2315877 02-08-2000 | Shirts, jackets, vests, t-shirts, nightgowns, sweatshirts, nightshirts, gloves, hats, leather gloves |
| H-D | 1775905 06-08-1993 | Shirts, jackets, vests, lingerie, belts, t-shirts, sweaters, pants, rain coats, nightgowns, halters, tank tops, sweatshirts, nightshirts, gloves, hats, chaps, wristbands, footwear, shorts, scarves, jeans, leather jackets, leather vests, leather chaps, leather belts, leather boots, leather gloves |
| H-D | 1596518 05-15-1990 | Jackets, vests, gloves, t-shirts, and caps |
| H-D | 1239313 05-24-1983 | Motorcycles |
| H-D | 1317592 02-05-1985 | Motorcycle Parts, Made of Metal-Namely, Dowel Pins, Cotter Pins, Clamps, Nuts, Bolts, Screws, Brackets, Studs, Spacers, Washers, Studs, Lock Washers, Retainers, Springs, Mounting Plates, and Bushings; Motorcycle Electrical Parts-Namely, Spark Plugs: Ignition Wires, Breaker Points, and Ignition Switches, Carburetors; Motorcycle Speedometers, Thermometers, Thermostats, Motorcycle Electrical Parts-Namely, Electrical Wire Terminals, Battery and Grounding Cables, Lenses, Magnets, Armatures, Circuit Breakers, Switches, Turn Signals and Indicators, Connectors, Voltage Regulators, Ignition System Pin Plugs, Socket Terminal Pins, Single Socket Pins, Ignition System Clamps, and Grounding Straps, and Motorcycle Parts-Namely, Reflectors and Stoplight Switches Thereto, Solenoid Switches; Motorcycle Parts-Namely, Starter Motor Brushes, and Tappets, Rods, Rocker Arms, Push Rod Cogers, Coil Covers, Valve Spring Retainers and Collars, Crank Pin Rollers, Lock Rings, Bearings, Flywheel Crank Pins, Gear Shaft Lock Plates, Bearing Rollers and Bearing Retainers, Crank Case Plugs, Oil Plugs, Oil Pump Plugs, Engine Bearing Shims, Cams, Cam Followers, Brake Control Levers, Brake Calipers, Starter Pins and Roll Pins, Crank Pins, Shift Lever Pivot Pin Plugs, Engine Instrument Plugs, Axle Caps, Oil Filler Caps, Gas Filler Caps, Transmission Gears, Pumps, Wheel Weights, Shift Levers, Chain Housings, Pawls for Gear Shifters, Clutch Hubs, |

Case 2:16-cv-01167-LA   Filed 08/30/16   Page 16 of 48   Document 1

| Mark | Reg. No. Reg. Date | Goods and Services |
|---|---|---|
| | | Clutch Drive Plates, Adjusting Nuts, Wheelbearings, Starter Gear Shift Levers, Transmission Shift Levers, Shifter Levers, Choke Levers, Chain Links, Brake Discs, Brake Pads, Brake Calipers, Brake Master Cylinders, Hydraulic Fluid Line Connectors, Brake Pedals, Axle Caps, Foot Rests, Stands, Handle Bar Grips, Clutch Cables, Throttle Cables, Mirrors, Oil and Air Filters, Seat Grab Straps, Mud Flaps, Highway Pegs, Air Cleaners, Body Trim |

43.     In addition to its longstanding and strong common-law rights in the SUPER

GLIDE mark, Harley owns the following federal registrations:

| Mark | Reg. No. Reg. Date | Goods and Services |
|---|---|---|
| SUPER GLIDE | 1315672 01-22-1985 | Motorcycles |

44.     In addition to its longstanding and strong common-law rights in its Bar & Shield

Logo, Harley owns, among others, the following federal registrations:

| Mark | Reg. No. Reg. Date | Goods and Services |
|---|---|---|
|  | 3393839 03-11-2008 | House mark for a full line of clothing, footwear and headwear |
|  | 1511060 11-01-1988 | Clothing, namely, boots, sweat shirts, jeans, hats, caps, scarves, motorcycle riding suits, neck ties, shirts, t-shirts, jackets, vest, ladies tops, bandanas |
|  | 1571032 12-12-1989 | Clothing, namely, jeans, t-shirts and jackets |

17

| Mark | Reg. No. Reg. Date | Goods and Services |
|---|---|---|
|  | 3185946<br><br>12-19-2006 | Jackets, baseball hats, caps, shirts and T-shirts |
|  | 1205380<br>08-17-1982 | Motorcycles<br><br>Clothing-namely, T-shirts |
|  | 3058720<br><br>02-14-2006 | Retail store services and distributorships in the fields of motorcycles, motorcycle parts and accessories, footwear, clothing, jewelry, and leather goods; rendering technical assistance in the establishment, operation, and business promotion of retail stores; retail store services in the fields of motorcycles, motorcycle parts and accessories, footwear, clothing, jewelry, and leather goods therefor via a global computer network; dealerships in the fields of motorcycles, motorcycle parts and accessories, footwear, clothing, jewelry, and leather goods. |
|  | 1660539<br><br>10-15-1991 | Motorcycles and motorcycle parts; namely, air cleaners, drive belts, belt guards, brakes, chains, clutches, crankcases, engine cylinders, fenders and fender supports,  footboards, forks, fuel tanks, leg guards, handlebars, cylinder heads, oil filters, oil pumps, seats, shock absorbers, backrests, wheels, and windshields<br><br>Belts, chaps, denim pants, gloves, hats, caps, jackets, neckties, night shirts, pants, rain suits, shirts, socks, suspenders, sweaters, sweatshirts, tank tops, athletic shoes, shoes, boots, t-shirts, underwear, vests, and wristbands<br><br>(Among other goods and services in Classes 8, 9, 11, 14, 16, 18, 20, 21, 24, 26, 27, 28, and 34.) |

45.     In addition to its longstanding and strong common-law rights in the Willie G.

Skull Logo, Harley owns, among others, the following federal registrations:

| Mark | Reg. No. Reg. Date | Goods and Services |
|---|---|---|
|  | 4465604 01-14-2014 | Clothing, namely, shirts, hats, caps, belts, jackets, gloves, sweatshirts, lounge pants, wrist bands |
|  | 3525970 10-28-2008 | Jackets, coats, gloves, shirts, shorts, caps, hats, headwear, knit hats, belts, neckties, pants, sweatshirts, T-shirts, leather clothing, namely, leather jackets, leather gloves, footwear, namely, boots and vest extenders |
|  | 3097410 05-30-2006 | Motorcycle parts and accessories, namely, derby covers, timer covers, air cleaner inserts, namely covers, gas cap medallions, fender skirts, console doors for fuel tanks, valve caps, license plate fasteners, foot board inserts, brake pedal pads, foot pegs, shifter pegs, heel rests, fuel tank panels, handle bar grips |
|  | 4465650 01-14-2014 | Motorcycles and structural parts therefor |
|  | 4844360 11-03-2015 | Parts of motorcycles, excluding parts of all motors and engines, namely, derby covers, air cleaner trim, timer covers, battery cover band, fuel caps, brake caliper inserts, fender skirts, console doors, head lamp visors, medallions, foot pegs, gearshift linkages, foot board covers, handlebar clamps, hand grips, fuel gauges, guard rail inserts, axle nut covers, breather end cap, valve stem caps, foot boards, turn signal visors, pivot bolt covers, tank panel, fender tip lens kit, console insert, air cleaner cover, decorative end caps, mirrors and mounting hardware for the aforesaid goods |

19

46.     In addition to its longstanding and strong common-law rights in the Number 1

Logo, Harley owns, among others, the following federal registrations:

| Mark | Reg. No. Reg. Date | Goods and Services |
|---|---|---|
|  | 2973501 07-19-2005 | Bandanas, jackets, shirts, caps, hats, t-shirts, leather jackets |
|  | 3697875 10-20-2009 | Shirts, hats, caps |
|  | 2979002 07-26-2005 | Drinking glasses, mugs, beverage glassware. |
|  | 4487292 02-25-2014 | Motorcycles and structural parts therefore |
|  | 3697874 10-20-2009 | Motorcycles and structural parts therefor |

47. The federal trademark registrations listed in Paragraphs 40 to 46 are prima facie evidence of Harley's ownership and the validity of those registered trademarks. (Attached as Exhibit A are printouts of the U.S Patent and Trademark Office TESS database records for all of the federal trademark registrations listed in Paragraphs 40 to 46). Further, many of these registrations are incontestable, and thus constitute conclusive evidence of Harley's exclusive right to use those marks for the products and/or services specified in those registrations pursuant to 15 U.S.C. §§ 1065 and 1115(b).

48. Harley also owns the following Wisconsin state trademark registrations for the HARLEY-DAVIDSON, HARLEY, H-D, and Bar & Shield Logo marks:

| Mark | Reg. Date | Goods and Services |
|---|---|---|
| HARLEY | 11-18-2009 | Motorcycles, motorcycle parts, jewelry, clothing, caps/headwear, leather goods, decals/stickers, patches, belt buckles, and signs. |
| HARLEY-DAVIDSON | 11-18-2009 | Motorcycles, motorcycle parts, jewelry, clothing, caps/headwear, leather goods, decals/stickers, patches, belt buckles, and signs. |
| H-D | 11-18-2009 | Motorcycles, motorcycle parts, jewelry, clothing, caps/headwear, leather goods, decals/stickers, patches, belt buckles, and signs. |
| HD | 11-18-2009 | Motorcycles, motorcycle parts, jewelry, clothing, caps/headwear, leather goods, decals/stickers, patches, belt buckles, and signs. |
|  | 11-18-2009 | Motorcycles, motorcycle parts, jewelry, clothing, caps/headwear, leather goods, decals/stickers, patches, belt buckles, and signs. |

| Mark | Reg. Date | Goods and Services |
|---|---|---|
|  | 11-18-2009 | Motorcycles, motorcycle parts, jewelry, clothing, caps/headwear, leather goods, decals/stickers, patches, belt buckles, and signs. |

49.     The Willie G. Skull Logo is an original work of authorship that constitutes copyrightable subject matter under U.S. law.  Harley is the owner of all copyright rights in the Willie G. Skull Logo, all preexisting works containing the Willie G. Skull Logo, and all derivative works of the Willie G. Skull Logo.  Harley owns U.S. Copyright Reg. No. VA 1-987-746, which issued on February 3, 2016.  A true and correct copy of the Original Certificate of Registration for the Willie G. Skull Logo is attached as Exhibit B.

50.     The copyright registration for the Willie G. Skull Logo listed above is valid and subsisting.  The copyright registration constitutes, in all instances, prima facie evidence of the validity of the copyright and the facts stated in the certificate.

## DEFENDANTS' WRONGFUL ACTS

### GearLaunch's Business Model

51.     According to GearLaunch's website GEARLAUNCH.COM, GearLaunch is in the business of building and operating online stores that display, promote, and offer for sale printed apparel such as t-shirts.  Specifically, GearLaunch claims to offer e-commerce services, including providing an online tool kit for product design; building and operating online stores; printing, packaging, and shipping apparel ordered through such stores; accepting and handling payments for such apparel; and marketing for such stores.  Gearlaunch's GEARLAUNCH.COM website suggests that it offers e-commerce services to its customers, but only offers users a form

to request a "demo" and has no sign-up facility for such e-commerce services. GearLaunch's website is accessible via the domain name GEARLAUNCH.COM, which is privately registered.

52. GearLaunch's GEARLAUNCH.COM website states that they offer potential clients the ability to create their own designs, and use GearLaunch's services to sell those products. GearLaunch is responsible for the manufacture, production, and distribution of the products sold on GearLaunch's websites. Further, GearLaunch maintains control over the advertising and promotion of the products sold on websites created and/or operated by GearLaunch.

**The GearLaunch Websites**

53. GearLaunch designed, built, maintains, and/or operates online stores at the domain names GEARHARLEY.COM, TEEKIWI.COM, TEEFUNY.COM, TEESEASON.COM, TEESHOP4U.COM, and TEEDIG.COM (collectively, the "GearLaunch Websites"). GearLaunch has advertised, promoted, distributed, offered for sale, and sold numerous apparel products bearing Harley's Trademarks (the "Infringing Products") on the GearLaunch Websites.

54. GearLaunch displays, promotes, and/or offers for sale the Infringing Products on the GearLaunch Websites, and through various Facebook pages.

55. GearLaunch has sold many thousands of Infringing Products according to the sales totals posted on the GearLaunch Websites. GearLaunch uses the domain names associated with the GearLaunch Websites to send e-mails advertising and offering Infringing Products for sale via those stores, as described in detail below.

56.     GearLaunch is also responsible for producing and/or manufacturing the Infringing Products and distributing them to the customers that purchase the Infringing Products on the GearLaunch Websites.

57.     All of the GearLaunch Websites have the same "Terms of Service" and "Copyright Dispute Policy." According to the Copyright Dispute Policy, third parties who believe that their copyrighted material is being infringed through GearLaunch's services are asked to contact Michael Schell at 234 Front Street, Level 3, San Francisco, CA 94111 (*i.e.*, one of GearLaunch's founders located at GearLaunch's address).

58.     Orders and payments for the Infringing Products offered on the GearLaunch Websites are handled by GearLaunch through web pages that uses the domain name CART-CHECKOUT.COM, which is used by GearLaunch for its own website as described above. GearLaunch also uses the domain name CUSTOMTEESALES.COM via its e-mail address support@customteesales.com for its PayPal account to accept and handle payments for the Infringing Products.

59.     The images for the Infringing Products displayed on all of the GearLaunch Websites are located at underlying URLs that use the domain name CART-CHECKOUT.COM, which is used by GearLaunch for its own website as described above.

60.     When customers purchase products on the GearLaunch Websites, GearLaunch produces and/or manufactures and ships the Infringing Products to customers or arranges to have the Infringing Products produced and/or manufactured and shipped to those customers.

## GEARHARLEY.COM

61.     GearLaunch operates the GEARHARLEY.COM website that uses the name

"Gear Harley" and advertises and offers various Infringing Products, including the representative

examples shown below:



62.     GearLaunch advertised some of the Infringing Products on the related Facebook

Shop "Gear Harley" as shown by the representative advertisements below:







63.   GearLaunch uses the domain names GEARHARLEY.COM and CART-

CHECKOUT.COM to send e-mails advertising and offering Infringing Products, including the

following two representative examples of Infringing Products, the second of which shows the

front and back of the Infringing Product:



**Front**          **Back**

64.     On the GEARHARLEY.COM website, each of the Infringing Products offered on the website has its own product page, which displays the quantity sold of that product as shown by the representative screenshot below.



65.     As of August 17, 2016, GearLaunch's GEARHARLEY.COM website indicates that at least 3,702 units of the Infringing Products have been sold on the website.

**TEEKIWI.COM**

66.     GearLaunch operates the TEEKIWI.COM website that uses the name "TeeKiwi" and advertises and offers Infringing Products, including the following representative examples:



67.     GearLaunch advertised one of the Infringing Products on a Facebook page titled "Daily Biker."

68.     GearLaunch uses the domain names TEEKIWI.COM and CART-CHECKOUT.COM to send emails advertising and offering the Infringing Products for sale.

69.     On TEEKIWI.COM, each of the Infringing Products offered on the site has its own product page, and some of the product pages display the quantity sold of that product.

70.     As of August 19, 2016, GearLaunch's TEEKIWI.COM website indicates that at least 1,731 units of the Infringing Products have been sold on the website.

**TEEFUNY.COM**

71.     GearLaunch operates the TEEFUNY.COM website that uses the name "TeeFuny" and advertises and offers Infringing Products, including the following representative examples:



72.     GearLaunch advertised some of the Infringing Products on the Facebook page titled "Cool Tee Shop."

73.     GearLaunch uses the domain names TEEFUNY.COM and CART-CHECKOUT.COM to send emails advertising and offering the Infringing Products for sale.

74.     On TEEFUNY.COM, each of the Infringing Products offered on the site has its own product page, and some of the product pages display the quantity sold of that product.

75.     As of August 19, 2016, GearLaunch's TEEFUNY.COM website indicates that at least 695 units of the Infringing Products have been sold on the website.

## TEESEASON.COM

76.     GearLaunch operates the TEESEASON.COM website that uses the name

"TeeSeason" advertises and offers Infringing Products, including the following representative

examples:





| Front | Back |



| Front | Back |

77.     GearLaunch advertised some of the Infringing Products on the Facebook page titled "Biker Spirit."

78.     GearLaunch uses the domain names TEESEASON.COM and CART-CHECKOUT.COM to send emails advertising and offering the Infringing Products for sale.

79.     On TEESEASON.COM, each of the Infringing Products offered on the site has its own product page, and some of the product pages display the quantity sold of that product.

80.     As of August 19, 2016, GearLaunch's TEESEASON.COM website indicates that at least 3,548 units of the Infringing Products have been sold on the website.

**TEESHOP4U.COM**

81.     GearLaunch operates the TEESHOP4U.COM website that uses the names "TeeShop4U Company" and "Bikers Corner" and advertises and offers Infringing Products, including the following representative examples:



Case 2:16-cv-01167-LA   Filed 08/30/16   Page 33 of 48   Document 1



82.     GearLaunch advertised some of the Infringing Products on the Facebook page titled "Bikers Corner."

83.     GearLaunch uses the domain names TEESHOP4U.COM and CART-CHECKOUT.COM to send emails advertising and offering the Infringing Products for sale.

84.     On TEESHOP4U.COM, each of the Infringing Products offered on the site has its own product page, and some of the product pages display the quantity sold of that product.

85.     As of August 19, 2016, GearLaunch's TEESHOP4U.COM website indicates that at least 5,020 units of the Infringing Products have been sold on the website.

**TEEDIG.COM**

86.     GearLaunch operates the TEEDIG.COM website that uses the name "TeeDig" advertises and offers Infringing Products, including the following representative examples:



87.     GearLaunch advertised some of the Infringing Products through the Facebook page titled "Biker Spirit."

88.     GearLaunch uses the domain names TEEDIG.COM and CART-CHECKOUT.COM to send emails advertising and offering the Infringing Products for sale.

89.     On TEEDIG.COM, each of the Infringing Products offered on the site has its own product page, and some of the product pages display the quantity sold of that product.

90.     As of August 24, 2016, GearLaunch's TEEDIG.COM website indicates that at least 931 units of the Infringing Products have been sold on the website.

### HARLEY'S OBJECTIONS TO DEFENDANTS' ACTIVITIES

91.      On January 24, 2016 and March 14, 2016, Harley emailed cease-and-desist demands to support@teekiwi.com objecting to TeeKiwi's sale of the Infringing Products.  To date, Harley has not received a response from TeeKiwi, and despite receiving notice of its infringing activities, TeeKiwi has continued to manufacture, advertise, promote, distribute, offer for sale, and/or sell the Infringing Products.

92.     On May 30, 2016 and June 15, 2016, Harley emailed cease-and-desist demands to support@teefuny.com objecting to TeeFuny's sale of the Infringing Products.  To date, Harley has not received a response from TeeFuny, and despite receiving notice of its infringing activities, TeeFuny has continued to manufacture, advertise, promote, distribute, offer for sale, and/or sell the Infringing Products.

93.     On June 22, 2016, Harley emailed a cease-and-desist demand to support@teeseason.com objecting to TeeSeason's sale of the Infringing Products.  To date, Harley has not received a substantive response from TeeSeason, and despite receiving notice of its infringing activities, TeeSeason has continued to manufacture, advertise, promote, distribute, offer for sale, and/or sell the Infringing Products.

## INJURY TO HARLEY AND THE PUBLIC

94.     Defendants' actions described above have damaged and irreparably injured and, if permitted to continue, will further damage and injure Harley, Harley's Trademarks, Harley's reputation and goodwill associated with those marks, Harley's reputation for high-quality products and services, and the public interest in consumers being free from confusion.

95.     Defendants' actions as described above have caused and are likely to continue to cause confusion, mistake, and deception as to the source or origin of the Infringing Products and have falsely suggested and are likely to continue to falsely suggest a sponsorship, connection, license, affiliation, or association between Defendants and/or its Infringing Products with Harley, Harley's Trademarks, and/or Harley's products and services.

96.     Defendants' actions described above are likely to dilute the distinctiveness of the famous HARLEY-DAVIDSON, HARLEY, H-D, and Bar & Shield Logo marks, and are also likely to tarnish those famous marks, thereby injuring Harley.

97.     As shown above, Defendants' products bear copies of the copyright-protected Willie G. Skull Logo.  Defendants' actions as described above copied the original expression of H-D's Willie G. Skull Logo without H-D's authorization.

98.     Harley has no adequate remedy at law.

99.     Defendants knew or should have known that their activities described above constituted trademark counterfeiting, trademark infringement, cybersquatting, copyright infringement, and unfair competition, and thus Defendants acted knowingly and willfully, in reckless disregard of the truth, and in bad faith.

**FIRST CLAIM FOR RELIEF**
**Trademark Counterfeiting Under Section 32(1)**
**of the Lanham Act, 15 U.S.C. § 1114(1)**

100.    Harley repeats and realleges each and every allegation set forth above.

101.    Harley owns a number of federal trademark registrations for Harley's Trademarks for various goods and services, including apparel.

102.    Without Harley's consent, Defendants intentionally used in commerce the HARLEY-DAVIDSON, HARLEY, H-D, Bar & Shield Logo, Willie G. Skull Logo, and Number 1 Logo marks and/or substantially indistinguishable variations or counterfeits thereof, as defined under 15 U.S.C. § 1116(d)(1)(B)(i), in connection with the sale, offering for sale, and/or distribution of the Infringing Products.

103.    Without Harley's consent, Defendants reproduced, counterfeited, copied, and/or colorably imitated the HARLEY-DAVIDSON, HARLEY, H-D, Bar & Shield Logo, Willie G. Skull Logo, and Number 1 Logo marks and applied such reproductions, counterfeits, copies, and/or colorable imitations to labels, signs, prints, packages, wrappers, receptacles or advertisements, as defined under 15 U.S.C. § 1116(d)(1)(B)(ii), intended to be used in commerce

37

upon or in connection with the sale, offering for sale, distribution, or advertising of the Infringing Products in a manner likely to cause confusion, or to cause mistake, or to deceive.

104. Defendants' actions described above are likely to cause confusion, mistake, or to deceive as to the origin, sponsorship, or approval of the Infringing Products, Defendants' services, and commercial activities, and thus constitute counterfeiting of Harley's federally registered HARLEY-DAVIDSON, HARLEY, H-D, Bar & Shield Logo, Willie G. Skull Logo, and Number 1 Logo marks identified above in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

105. Defendants are directly, vicariously, and/or contributorily liable for the actions described above.

106. The actions of Defendants described above have at all times relevant to this action been willful and/or knowing.

107. As a direct and proximate result of the actions of Defendants as alleged above, Harley has been and will continue to be damaged and irreparably harmed.

108. Harley has no adequate remedy at law.

**SECOND CLAIM FOR RELIEF**
**Trademark Infringement Under Section 32(1)**
**of the Lanham Act, 15 U.S.C. § 1114(1)**

109. Harley repeats and realleges each and every allegation set forth above.

110. Defendants used and continues to use in commerce the Harley Trademarks and reproductions, copies, and colorable imitations thereof in connection with the offering, sale, distribution, and advertising of goods and services, which are likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of the Infringing Products, Defendants'

services, and Defendants' commercial activities, and thus constitute infringement of the Harley Trademarks referred to above in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

111.    Defendants are directly, vicariously, and/or contributorily liable for the actions described above.

112.    The actions of Defendants described above have at all times relevant to this action been willful and/or knowing.

113.    As a direct and proximate result of the actions of Defendants as alleged above, Harley has been and will continue to be damaged and irreparably harmed.

114.    Harley has no adequate remedy at law.

**THIRD CLAIM FOR RELIEF**
**Trademark Infringement, False Designation**
**of Origin, and Unfair Competition**
**Under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)**

115.    Harley repeats and realleges each and every allegation set forth above.

116.    Defendants' actions described above are likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of the Infringing Products and Defendants' commercial activities, and thus constitute trademark infringement, false designation of origin, and unfair competition with respect to Harley's Trademarks in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

117.    Defendants are directly, vicariously, and/or contributorily liable for the actions described above.

118.    The actions of Defendants described above have at all times relevant to this action been willful.

119.    As a direct and proximate result of the actions of Defendants as alleged above, Harley has been and will continue to be damaged and irreparably harmed.

120.     Harley has no adequate remedy at law.

### FOURTH CLAIM FOR RELIEF
### Trademark Dilution Under Section
### 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)

121.     Harley repeats and realleges each and every allegation set forth above.

122.     Harley has engaged in extensive nationwide advertising, promotion, and use of the HARLEY-DAVIDSON, HARLEY, H-D, and Bar & Shield Logo marks for many years. Further, Harley has had massive sales of goods and services bearing such marks for decades.

123.     The HARLEY-DAVIDSON, HARLEY, H-D, and Bar & Shield Logo marks have for many years received extensive unsolicited media attention nationwide.  Such extensive and frequent media attention and commercial success has had a substantial impact on the public and has long created an association in the minds of consumers between Harley and the HARLEY-DAVIDSON, HARLEY, H-D, and Bar & Shield Logo marks, such that these marks are famous and were famous nationwide before Defendants commenced their unauthorized use of the those marks.

124.     Defendants' actions described above, all occurring after the HARLEY-DAVIDSON, HARLEY, H-D, and Bar & Shield Logo marks became famous, are likely to cause dilution by blurring and dilution by tarnishment of the distinctive quality of those trademarks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

125.     Defendants are directly, vicariously, and/or contributorily liable for the actions described above.

126.     The actions of Defendants described above have at all times relevant to this action been willful.

127.     As a direct and proximate result of the actions of Defendants as alleged above, Harley has been and will continue to be damaged and irreparably harmed.

128.     Harley has no adequate remedy at law.

**FIFTH CLAIM FOR RELIEF**
**Cybersquatting Under 15 U.S.C. § 1125(d)**

129.     Harley repeats and realleges each and every allegation set forth above

130.     Defendants registered, trafficked in, and/or used the gearharley.com domain name (the "Infringing Domain Name") with a bad-faith intent to profit from Harley's HARLEY and HARLEY-DAVIDSON marks.  The HARLEY mark is a widely recognized shorthand for the HARLEY-DAVIDSON mark and the general public and motorcycling public use HARLEY and HARLEY-DAVIDSON interchangeably to refer to Harley and its products and services.

131.     Defendants and/or others acting on Defendants' behalf are or were the registrants or the registrants' authorized licensees for the Infringing Domain Name.

132.     The Infringing Domain Name is confusingly similar to Harley's HARLEY and HARLEY-DAVIDSON marks.

133.     Harley's HARLEY and HARLEY-DAVIDSON marks were distinctive and federally registered at the time Defendants registered and began using the Infringing Domain Name.

134.     Neither Defendants nor their authorized licensees or representatives have any intellectual property rights or any other rights in Harley's HARLEY and HARLEY-DAVIDSON marks or variations thereof.

135.     The Infringing Domain Name does not consist of a prior non-infringing legal name of Defendant, or a prior non-infringing name that is otherwise commonly used to identify Defendant.

41

136.    Defendants are directly, vicariously, and/or contributorily liable for the actions described above.

137.    The actions of Defendants described above have at all times relevant to this action been willful.

138.    As a direct and proximate result of the actions of Defendants as alleged above, Harley has been and will continue to be damaged and irreparably harmed.

139.    Harley has no adequate remedy at law.

**SIXTH CLAIM FOR RELIEF**
**Copyright Infringement**
**<u>17 U.S.C. § 101, et seq.</u>**

140.    Harley repeats and realleges each and every allegation set forth above.

141.    Harley's Willie G. Skull Logo is a wholly original work of authorship and constitutes copyrightable subject matter under the Copyright Act of 1976, 17 U.S.C. § 101 et seq.

142.    Harley is the sole owner of all right, title, and interest in and to the copyright in the Willie G. Skull Logo.

143.    Harley has complied in all respects with the Copyright Act of 1976 (17 U.S.C. § 101 et seq.) and has received from the Registrar of Copyrights Certificate of Copyright, Registration No. VA 1-987-746 for the Willie G Skull Design.  The Certificate of Registration, attached as Exhibit B, constitutes prima facie evidence of the validity of Harley's copyright rights and the facts stated in the Certificate.

144.    Harley has never licensed, or in any other way authorized, Defendants to reproduce, cause to reproduce, prepare derivative works from, distribute, or display any portion of the Willie G. Skull Logo, which are the exclusive rights of Harley as the copyright owner.

145.     By the actions described above, Defendants have infringed and will continue to infringe Harley's copyright rights in the Willie G. Skull Logo in violation of the Copyright Act, 17 U.S.C. § 101, et seq.

146.     The actions of Defendants described above have at all times relevant to this action been willful.

147.     As a direct and proximate result of the actions of Defendants as alleged above, Harley has been and will continue to be damaged and irreparably harmed.

148.     Harley has no adequate remedy at law.

**SEVENTH CLAIM FOR RELIEF**
**Trademark Infringement**
**Under Wis. Stat. § 132 et. seq.**

149.     Harley repeats and realleges each and every allegation set forth above.

150.     Defendants' actions and/or the actions of others acting on behalf of or with Defendants' authorization or knowledge making use of the HARLEY-DAVIDSON, HARLEY, H-D, and the Bar & Shield Logo marks with intent to deceive as to the affiliation, connection, or association of Defendants with Harley in the conduct of their business without the authorization of Harley as set forth above constitutes statutory trademark infringement of the Wisconsin registered HARLEY-DAVIDSON, HARLEY, H-D, and the Bar & Shield Logo marks identified above in violation of Chapter 132 of the Wisconsin Statutes.

151.      The actions of Defendants and/or the actions of others acting on behalf of or with Defendants' authorization or knowledge described above have at all times relevant to this action been willful.

152.     Defendants are directly, vicariously, and/or contributorily liable for the actions described above.

153. The actions of Defendants described above have at all times relevant to this action been willful.

154. As a direct and proximate result of the actions of Defendants as alleged above, Harley has been and will continue to be damaged and irreparably harmed.

155. Harley has no adequate remedy at law.

**EIGHTH CLAIM FOR RELIEF**
**Common Law Trademark Infringement, Unfair**
**<u>Competition, and Misappropriation</u>**

156. Harley repeats and realleges each and every allegation set forth above.

157. Defendants' actions described above with respect to the Harley Trademarks constitute common law trademark infringement, unfair competition, and misappropriation of Harley's goodwill under the common law.

158. Defendants are directly, vicariously, and/or contributorily liable for the actions described above.

159. The actions of Defendants described above have at all times relevant to this action been willful.

160. As a direct and proximate result of the actions of Defendants as alleged above, Harley has been and will continue to be damaged and irreparably harmed.

161. Harley has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Harley prays that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief including, but not limited to, the following:

A. An injunction preliminarily and permanently enjoining Defendants and their employees, agents, partners, officers, directors, owners, shareholders, principals, subsidiaries,

44

related companies, affiliates, distributors, dealers, retailers, and all persons in active concert or participation with any of them (including their Internet Service Providers (ISPs) and domain name registrars):

1. From using and/or registering the Harley Trademarks in any form, including but not limited to in connection with any other wording or designs, and from using any other marks, logos, designs, designations, or indicators that are confusingly similar to the Harley Trademarks or likely to dilute the distinctiveness of or tarnish any of the HARLEY-DAVIDSON, HARLEY, H-D, and Bar & Shield Logo Marks, in an any unauthorized manner including, but not limited to, use on products, including without limitation the Infringing Products, product packaging and labeling, websites, social media sites, signage, and promotional and advertising materials; and as or as part of any trademarks, business names, domain names, e-mail addresses, URLs, metatags, screen names, social media names, keywords, or other identifiers.

2. From representing by any means whatsoever, directly or indirectly, that Defendants or any products or services offered by Defendants, including without limitation the Infringing Products, or any activities undertaken by Defendants, emanate from Harley, or are authorized, licensed, or otherwise affiliated with or sponsored or endorsed by Harley;

3. From registering, trafficking in, and using, in any manner, the Infringing Domain Name, or any other domain names that are confusingly similar to Harley's HARLEY-DAVIDSON, HARLEY, H-D, and SUPER GLIDE marks or any other marks owned by Harley or likely to dilute the distinctiveness of or

Case 2:16-cv-01167-LA   Filed 08/30/16   Page 45 of 48   Document 1

tarnish any of the HARLEY-DAVIDSON, HARLEY, H-D, and Bar & Shield

Logo Marks or any other marks owned by Harley;

    4.     From assisting, aiding, or abetting any other person or business

entity in engaging in or performing any of the activities referred to in

subparagraphs A.1-3 above.

B.     An Order directing Defendants to destroy all products and items that bear the

Harley Trademarks, including without limitation the Infringing Products, and to confirm such

destruction in writing to Harley, and to provide to Harley the identity and complete contact

information for all persons and entities from which Defendants obtained the Infringing Products

including, but not limited to, manufacturers, wholesalers, distributors, retailers and all others that

assisted or enabled Defendants to make, advertise, promote, sell, distribute, and transport the

Infringing Products.

C.     An Order requiring Defendants to transfer to Harley or Harley's designees: (1) the

domain name GEARHARLEY.COM; and (2) all other domain names they own or control,

directly or indirectly, or that were registered or acquired at their direction, request, or instruction,

that contain, are comprised of, or otherwise are confusingly similar to the Harley Trademarks or

any other marks owned by Harley.

D.     An Order requiring Defendants to pay Harley the cost for corrective advertising

and/or to engage in corrective advertising in a manner directed by the Court.

E.     An Order directing Defendants to file with this Court and serve on Harley's

attorneys, thirty (30) days after the date of entry of any injunction, a report in writing and under

oath setting forth in detail the manner and form in which they have complied with the injunction

and other orders issued by the Court.

F. An Order requiring Defendants to pay statutory damages in accordance with 15 U.S.C. § 1117(c) of $2,000,000 per mark per type of product or service sold, offered for sale, or distributed by Defendants bearing marks deemed to be counterfeits of the HARLEY-DAVIDSON, HARLEY, H-D, Bar & Shield Logo, Willie G. Skull Logo, and/or Number 1 Logo.

G. An Order requiring Defendants to pay statutory damages in accordance with 15 U.S.C. § 1117(d), on election by Harley, in an amount of $100,000 for each domain name found to constitute cybersquatting.

H. An Order requiring Defendants to pay statutory damages in accordance with 17 U.S.C. § 504 in an amount of $150,000 per work infringed.

I. An Order requiring Defendants to account for and pay to Harley any and all profits arising from the foregoing acts of counterfeiting, infringement, dilution, false designation of origin, cybersquatting, and unfair competition, and an increasing of such profits for payment to Harley in accordance with 15 U.S.C. § 1117, and other applicable statutes and laws;

J. An Order requiring Defendants to pay Harley compensatory damages in an amount as yet undetermined caused by the foregoing acts of counterfeiting, infringement, dilution, false designation of origin, unfair competition, and trebling such compensatory damages for payment to Harley in accordance with 15 U.S.C. § 1117, and other applicable statutes and laws;

K. An Order requiring Defendants to pay Harley punitive damages in an amount as yet undetermined caused by the foregoing acts of Defendant;

L. An Order requiring Defendants to pay Harley's costs and attorney's fees in this action pursuant to 15 U.S.C. § 1117, 17 U.S.C. § 505, and other applicable statutes and laws; and

M.    Other relief as the Court may deem appropriate.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Harley respectfully demands a trial by jury for all claims so triable.

Respectfully submitted,

Dated this 30th day of August, 2016            **MICHAEL BEST & FRIEDRICH LLP**

By:    *s/Katherine W. Schill*
Katherine W. Schill, SBN 1025887
100 East Wisconsin Avenue
Suite 3300
Milwaukee, WI 53202-4108
kwschill@michaelbest.com
Phone:  (414) 223-2527
Fax:  (414) 277-0656

**KELLY IP, LLP**
David M. Kelly
Stephanie H. Bald
Anjie Vichayanonda
1919 M Street NW, Suite 610
Washington, D.C. 20036
david.kelly@kelly-ip.com
stephanie.bald@kelly-ip.com
anjie.vichayanonda@kelly-ip.com
Phone:  (202) 808-3570
Fax:  (202) 354-5232

**Attorneys for Plaintiffs**
**H-D U.S.A., LLC and**
**Harley-Davidson Motor Company Group, LLC**